UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREAS KUHBIER, | |
| Plaintiff, | Case No. 14-CV-888 (KMK) |
| -v- | OPINION & ORDER |
| MCCARTNEY, VERRINO & ROSENBERRY VESTED PRODUCER PLAN; MCCARTNEY, VERRINO & ROSENBERRY VESTED PRODUCER PLAN ADMINISTRATOR; MCCARTNEY, VERRINO & ROSENBERRY INSURANCE AGENCY; MCCARTNEY & ROSENBERRY GROUP, INC.; VERRINO & ASSOCIATES, INC., | |
| Defendants. | |

Appearances:

Elizabeth Evelin Hunter, Esq.
William David Frumkin, Esq.
Frumkin & Hunter LLP
White Plains, NY
*Counsel for Plaintiff*

Lorin Ann Donnelly, Esq.
Milber Makris Plousadis & Seiden, LLP
Woodbury, NY
*Counsel for Defendant McCartney, Verrino & Rosenberry Insurance Agency*

Michael Joseph Cannon, Esq.
Lorin Ann Donnelly, Esq.
Milber Makris Plousadis & Seiden, LLP
Woodbury, NY
*Counsel for Defendants McCartney & Rosenberry Group, Inc. and Verrino & Associates, Inc.*

KENNETH M. KARAS, District Judge:

Andreas Kuhbier ("Plaintiff") filed suit against McCartney, Verrino & Rosenberry

Vested Producer Plan; McCartney, Verrino & Rosenberry Vested Producer Plan Administrator;

McCartney, Verrino & Rosenberry Insurance Agency; McCartney & Rosenberry Group, Inc.;

and Verrino & Associates, Inc. to recover benefits that Plaintiff alleges are due to him under a

plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

§ 1132(a)(1)(B), or under a contract, as well as for failure to comply with a document request

under ERISA.[1]  (*See* Compl. (Dkt. No. 1).)  McCartney, & Rosenberry Group, Inc., d/b/a

McCartney, Verrino & Rosenberry Insurance Agency, and Verrino & Associates, Inc.

(collectively "Defendants") move to dismiss Plaintiff's First and Second Claims for relief, which

are the two ERISA claims.  (*See* Dkt. No. 27.)  For the following reasons, Defendants' Motion

To Dismiss is denied.

## I.  Background

### A.  Factual Background

The facts relevant to this Motion To Dismiss are derived from Plaintiff's Complaint,

which the Court takes as true for the purposes of the instant Motion, as well as from other

documents that the Court may properly consider in deciding this Motion.  Plaintiff was employed

by Defendant McCartney, Verrino & Rosenberry Insurance Agency and its affiliated, subsidiary,

and related entities, McCartney & Rosenberry Group, Inc. and Verrino & Associates, Inc.

(Compl. ¶ 6.)  Plaintiff was employed from approximately December 2004 to June 2012.  (*Id.*

¶ 7.)  Plaintiff initially "worked as an independent contractor, but then became an employee paid

on a salary-in-advance-of-commission basis."  (*Id.* ¶ 17.)  On or about May 5, 2005, Plaintiff

entered into a producer agreement with Defendants ("the 2005 Producer Agreement").  (*Id.*

¶ 18.)  In or about February 2009, he entered into a new producer agreement ("the 2009 Producer

---

[1] Plaintiff brings two breach of contract claims against Defendants, one pleaded in the
alternative to the ERISA benefits claim, and one not.  (*See* Compl. ¶¶ 69–85.)

Agreement") that was retroactive to January 2009 and superseded the 2005 Producer Agreement. (*Id.* ¶ 19.)

Schedule B of the 2009 Producer Agreement provides that "[o]n the seventh (7th) anniversary of the Employment Date, Producer shall become eligible to participate in [Defendants'] Vested Producer Plan," (hereinafter, "Schedule B" or the "Plan").  (Decl. of Lorin A. Donnelly ("Donnelly Decl.") Ex. B, Schedule B (Dkt. No. 35).)[2]  Schedule B provides that Defendants "will maintain an ongoing and updated listing of Producer's accounts, which [Defendants] will provide to Producer for review on a periodic basis."  (*Id.*)  "All such accounts coded to Producer (excluding any Life, Health or Employee Benefit policies) shall be referred to herein as Producer's Book of Business."  Under Schedule B,

> [u]pon the Producer's retirement or death ("Termination Date"), [Defendants] shall
> pay to Producer (or his/her estate) a bonus amount equal to thirty-five percent

---

[2] Exhibit B is fourteen pages.  Pages one through five, which are sequentially numbered, constitute the 2009 Producer Agreement.  Unnumbered pages six and seven constitute Schedule A; unnumbered page eight is Schedule B; unnumbered page nine is Schedule C; unnumbered page ten is Schedule D; unnumbered pages eleven and twelve constitute Schedule E; unnumbered page thirteen is Schedule F; and unnumbered page fourteen is the MVR Lead Generation Program document.  Each separate part of Exhibit B will be cited separately.

Although not attached to the Complaint, these documents are properly considered by the Court in deciding this Motion To Dismiss because they are integral to the Complaint.  *See Forgione v. Gaglio*, No. 13-CV-9061, 2015 WL 718270, at *17 (S.D.N.Y. Feb. 13, 2015) ("Because the [ERISA] [p]lan document and adoption agreement are undoubtedly integral to the [c]omplaint, the [c]ourt may consider these materials in connection with the instant motions."); *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 568 n.3 (S.D.N.Y. 2012) ("The [c]ourt can properly consider the [p]lan and the [s]ummary [p]lan [d]escription on this motion to dismiss because they are essential to the plaintiffs' ERISA claims and incorporated by reference into their complaint"); *DeSilva v. N. Shore-Long Is. Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 545 n.22 (E.D.N.Y. 2011) ("Although the [c]ourt typically may not look beyond the complaint in ruling on a motion to dismiss, the [c]ourt may consider the plan documentation submitted by defendants here, because the plaintiffs' claims are based upon the ERISA plans and the plan documents plainly are integral to [the] plaintiffs' complaint."); *see also Pierce v. P&A Admin. Servs., Inc.*, No. 09-CV-526, 2011 WL 2261116, at *7 (W.D.N.Y. June 6, 2011) (collecting cases where courts in the Second Circuit have considered ERISA plan documents in deciding motions to dismiss).

(35%) of the sum of all gross commissions paid to [Defendants] with respect to Producer's Book of Business over the prior 12-month period.  Such bonus shall be payable in equal monthly installments on the first of each month for 60 months following the Termination Date.

(*Id.*)  Additionally, Schedule B provides that "[a]ny violation of Sections 5 or 6 of this Agreement by Producer will result in forfeiture of the bonus payable under the Vested Producer Plan and will require Producer to immediately return all payments already received."  (*Id.*) Section 5 covers ongoing duties of confidentiality to Defendants and Section 6 is a non-compete agreement.  (*See* Donnelly Decl. Ex. B, Producer Agreement ¶¶ 5–6.)

Plaintiff further alleges that in January 2012, Scot A. McCartney, President of McCartney & Rosenberry Group, Inc., "attempted to force [Plaintiff] to sign a Schedule F to the 2009 Producer Agreement, which would have removed the Plan (Schedule B) from the 2009 Producer Agreement," but Plaintiff "refused to sign the Schedule F document."  (Compl. ¶¶ 14, 24.)

Plaintiff reached the seventh anniversary of his employment date on or about May 5, 2012, (Compl. ¶¶ 30, 57; Donnelly Decl. Ex. B, Schedule C ("With reference to Schedule B item (d), Andrea's [sic] first contract date is dated May 5th 2005.")), and retired on June 20, 2012.  (Compl. ¶ 58.)  Plaintiff alleges that despite his eligibility, he has been refused payment under Schedule B.  (*Id.* ¶¶ 59–61.)  Additionally, Plaintiff alleges that "[a]lthough the Plan does not appear to have any claims procedure, Plaintiff submitted a claim for employee benefits pursuant to ERISA § 503, 29 U.S.C. § 1103[,]" and "[t]he claim was denied, or should be deemed denied, by the Plan."  (*Id.* ¶ 52.)  Finally, Plaintiff alleges that "[o]n or about July 24, 2013, Plaintiff requested from the Plan copies of any [P]lan documents and summary [P]lan descriptions[,]" (*id.* ¶ 66), but Defendants failed to provide the requested documents, (*id.* ¶ 67).

B.  Procedural Background

Plaintiff's Complaint contains four claims for relief.  The First Claim is brought pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), alleging that Plaintiff was deprived employee benefits due to him under the terms of an ERISA employee pension benefit plan. (*See* Compl. ¶¶ 48–63.)  Plaintiff's Second Claim alleges that Defendants failed to comply with a written request for plan documents, in violation of ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4). (*See id.* ¶¶ 64–68.)  Plaintiff's Third Claim is for breach of contract, pleaded in the alternative to the First Claim, alleging that Defendants breached their contract with Plaintiff by failing to provide the payments set out under 2009 Producer Agreement.  (*See id.* ¶¶ 69–79.)  The Fourth Claim also is for breach of contract, not pleaded to the alternative to the First Claim, alleging that Defendants breached the 2009 Producer Agreement by failing to reimburse Plaintiff for certain business expenses incurred by Plaintiff, which reimbursement was required by the Agreement. (*See id.* ¶¶ 80–85.)

Pursuant to a scheduling order entered by the Court on May 20, 2014, (*see* Dkt. No. 16), Defendants filed the instant Motion To Dismiss the First and Second Claims, the claims brought pursuant to ERISA.  (*See* Dkt. Nos. 27, 35, 36.)  Plaintiff submitted his opposition to the Motion, (*see* Dkt. No. 38), and Defendants filed a reply, (*see* Dkt. No. 33).

## II.  Discussion

A.  Standard of Review

Defendants move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations, alterations, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure, which requires that a prayer for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alterations and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007);

*see also Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alterations and internal quotation marks omitted)); *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) ("In addressing the sufficiency of a complaint we accept as true all factual allegations and draw from them all reasonable inferences."). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"In ruling on a 12(b)(6) motion, . . . a court may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in [the] plaintiff['s] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit." *Kalyanaram v. Am. Ass'n of Univ. Professors at the N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (citation, some alterations, and internal quotation marks omitted). Here, although the 2009 Producer Agreement and its attached Schedules were not appended to the Complaint, they are properly considered in deciding the Motion To Dismiss without converting the Motion into a motion for summary judgment because they are incorporated by reference and integral to the Complaint. *See Gabelman v. Sher*, No. 11-CV-2718, 2012 WL 1004872, at *2 n.2 (E.D.N.Y. Mar. 23, 2012) (holding, in an ERISA case, that where the plaintiff's entitlement to relief depended on whether an agreement constituted an

ERISA plan, that agreement "is integral to the complaint because [p]laintiff 'relie[d] heavily upon its terms and effect' when drafting the complaint" (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002))).

    B.  Analysis

        1.  ERISA

ERISA governs employee benefit plans offered and administered "by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1). "To state a claim under ERISA, a plaintiff must allege and establish the existence of an employee benefit plan that is governed by ERISA." *Adams v. Intralinks, Inc.*, No. 03-CV-5384, 2004 WL 1627313, at *7 (S.D.N.Y. July 20, 2004) (internal quotation marks omitted). Here, Plaintiff claims that Schedule B qualifies as an employee pension benefit plan, and he brings suit pursuant to 29 U.S.C. § 1132(a)(1)(B) claiming that Defendants violated the terms of the Plan by refusing to pay Plaintiff the benefits to which he says he is entitled, and pursuant to 29 U.S.C. § 1132(c)(1)(B) claiming that Defendants failed to comply with a document request. Quite simply, the key issue in deciding this Motion is whether Schedule B of the 2009 Producer Agreement is a plan under ERISA.

ERISA defines a "pension plan" as "any plan, fund, or program which . . . is hereafter established or maintained by an employer . . . to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan." 29 U.S.C. § 1002(2)(A). "A 'plan, fund, or

program' under ERISA is established if from the surrounding circumstances a reasonable person

can ascertain the intended benefits, a class of beneficiaries, the source of financing, and

procedures for receiving the benefits." *Grimo v. Blue Cross/Blue Shield of Vt.*, 34 F.3d 148, 151

(2d Cir. 1994) (alteration and internal quotation marks omitted).  The "touchstone" for

determining if a plan is governed by ERISA is whether administering it necessitates "an ongoing

administrative scheme." *Castagna v. Luceno*, No. 09-CV-9332, 2011 WL 1584593, at *19

(S.D.N.Y. Apr. 26, 2011) (internal quotation marks omitted), *aff'd*, 744 F.3d 254 (2d Cir. 2014)

and *aff'd*, 558 F. App'x 19 (2d Cir. 2014).  ERISA applies only "with respect to benefits whose

provision by nature requires an ongoing administrative program to meet the employer's

obligation." *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 565 (2d Cir. 1998) (quoting *Fort

Halifax Packing Co. v. Coyne,* 482 U.S. 1, 11 (1987)).  This is so because only "plans," and not

mere "benefits," are the focus of ERISA.  *Id.*[3]

Moreover, not all "plans" are ERISA "pension plans," as only "plans designed for the

purpose of paying retirement income should be considered to provide retirement income under

ERISA." *Int'l Paper Co. v. Suwyn*, 978 F. Supp. 506, 510 (S.D.N.Y. 1997) (internal quotation

marks omitted).  In determining whether the plan at issue provides retirement income, courts

consider the "express terms or surrounding circumstances" of the plan.  *Murphy v. Inexco Oil

Co.*, 611 F.2d 570, 575 (5th Cir. 1980) ("The words 'provides retirement income' patently refer

only to plans designed for the purpose of paying retirement income whether as a result of their

---

[3] A plan should be evaluated in light of Congress's primary reason for enacting ERISA—
to "safeguard employee interests by reducing the threat of abuse or mismanagement of funds."
*O'Connor v. Commonwealth Gas Co.*, 251 F.3d 262, 266 (1st Cir. 2001); *see also Massachusetts
v. Morash*, 490 U.S. 107, 115 (1989) ("In enacting ERISA, Congress' primary concern was with
the mismanagement of funds accumulated to finance employee benefits and the failure to pay
employees benefits from accumulated funds.").

express terms or surrounding circumstances.").  Labor regulations provide that bonus plans—

"payments made by an employer to some or all of its employees as bonuses for work

performed"—are not governed by ERISA "unless such payments are systematically deferred to

the termination of covered employment or beyond, or so as to provide retirement income to

employees."  29 C.F.R. § 2510.3-2(c); *see also Foster v. Bell Atl. Tricon Leasing Corp.*, No. 93-

CV-4527, 1994 WL 150830, at *2 (S.D.N.Y. Apr. 20, 1994) (discussing the "bonus plan

exemption" in the labor regulations).  Thus, in determining whether a plan is governed by

ERISA, courts consider whether the plan requires an "ongoing administrative program" and

whether the purpose of the plan is primarily to provide retirement income to some or all

employees.  *Hardy v. Adam Rose Ret. Plan*, 957 F. Supp. 2d 407, 413–15 (S.D.N.Y. 2013), *aff'd*,

576 F. App'x 20 (2d Cir. 2014).

## 2.  Deciding the Applicability of ERISA at the Motion To Dismiss Stage

"[W]here the record contains the undisputed terms of the disputed plan, . . . a [c]ourt *may*

decide the applicability of ERISA as a matter of law."  *Foster v. Bell Atl. Tricon Leasing Corp.*,

No. 93-CV-4527, 1994 WL 150830, at *1 (S.D.N.Y. Apr. 20, 1994) (emphasis added); *see also*

*Albers v. Guardian Life Ins. Co. of Am.*, No. 98-CV-6244, 1999 WL 228367, at *2 (S.D.N.Y.

Apr. 19, 1999) (noting that the applicability of ERISA "is cognizable on a Rule 12(b)(6) motion"

(internal quotation marks omitted)).  However, the Court is not required to decide the

applicability of ERISA at the motion to dismiss stage.  In particular, it may not be possible to

determine whether ERISA applies as a matter of law if the documentation before the Court is

limited, and in such cases courts may deny motions to dismiss and decide the applicability of

ERISA at a later stage.  *See Mullins v. Pfizer, Inc.*, 23 F.3d 663, 666 (2d Cir. 1994) ("At the

outset, the district court will have to determine whether ERISA applies to the [plan].  ERISA

applies if the [plan] amended an existing ERISA plan or itself constituted a new ERISA plan.

On the other hand, the [plan] might not be an ERISA plan at all. . . . On remand, the district court

should allow further discovery to enable the parties to augment the record regarding them.");

*Boudinot v. Shrader*, No. 09-CV-10163, 2012 WL 489215, at *7 & n.92 (S.D.N.Y. Feb. 15,

2012) (holding that the court could not conclude at the motion to dismiss stage whether the plan

in question was an ERISA plan, because "it [was] impossible to determine on the motion the

stated purpose of the [plan], whether the benefits were discretionary, how the [plan] was

marketed to shareholders, or the specific structure of the plan"); *Falcone v. Provident Life &*

*Accident Ins. Co.*, No. 08-CV-300, 2008 WL 4694211, at *3 (S.D. Ohio Oct. 23, 2008) ("In

general, discovery is not permitted in ERISA actions where there has been a denial of benefits.

However, a court may permit limited discovery on, *inter alia,* the narrow issue of ERISA's

applicability to the subject plan or policy." (citation omitted)).

### 3.  Determining Whether the Plan is an ERISA Plan

#### a.  Determining Whether the Plan is an ERISA Pension Plan

Defendants argue that Schedule B "was not designed primarily for the purpose of

providing retirement income and is therefore not an ERISA 'pension plan' under 29 U.S.C.

§1002(2)(A)," because "[o]nly plans designed for the purpose of paying retirement income

should be considered to provide retirement income under ERISA."  (Mem. of Law in Supp. of

Defs.' Mot. To Dismiss ("Defs.' Mem.") 13 (Dkt. No. 36).)  This is a technically correct

statement of the law, but it does not yield the result Defendants seek.  Section 1002(2)(A)

provides two ways for a plan to qualify as an ERISA pension plan.  A plan is an ERISA pension

plan if it *either* "(i) provides retirement income to employees, *or* (ii) results in a deferral of

income by employees for periods extending to the termination of covered employment or beyond[.]"  29 U.S.C. § 1002(2)(A) (emphasis added).

Defendants are correct that a plan should not be qualified as an ERISA pension plan under subpart (i) because it "provides retirement income to employees," *id* § 1002(2)(A)(i), unless it is designed for that specific purpose.  *See Hardy*, 957 F. Supp. 2d at 414 (holding that "generally only plans designed for the purpose of paying retirement income should be considered to provide retirement income under ERISA" (internal quotation marks omitted)).  However, the statutory language is disjunctive; even if a plan does not meet the requirements of subpart (i) of 29 U.S.C. § 1002(2)(A), it can still be an ERISA pension plan under subpart (ii) if it "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond."  Schedule B arguably results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, and therefore plausibly qualifies as an ERISA pension plan under the statutory language.

Next, Defendants argue that even if Schedule B falls into the statutory language, it is excluded by the regulation that interprets that statute.  *See* 29 C.F.R. § 2510.3-2(c).  That regulation sets out circumstances where a bonus plan that fits under the statutory definition of an ERISA pension plan under subpart (ii) of section 1002(2)(A) nonetheless should not be considered an ERISA pension plan.  *See Adams*, 2004 WL 1627313, at *7 (quoting ERISA's definition of an employee pension benefit plan, codified at section 1002(2)(A), then noting that 29 C.F.R. § 2510.3-2(c) "[s]pecifically exclude[s] from this definition" bonus payments unless one of the exceptions applies); *Hahn v. Nat'l Bank, N.A.*, 99 F. Supp. 2d 275, 278 (E.D.N.Y. 2000) (noting that Department of Labor regulations "clarify the limits of ERISA coverage and identify certain plans that do not constitute employee benefit pension plans for ERISA

purposes"). Specifically, section 2510.3-2(c) of title 29 of the Code of Federal Regulations provides that "the terms 'employee pension benefit plan' and 'pension plan' shall not include payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." Defendants' argument that the provision at issue should not be considered a pension plan pursuant to this regulation is twofold. First, because Schedule B, "by its very terms, provides for a bonus for work performed," it is "expressly excluded from the definition an employee benefit plan." (Defs.' Mem. 8.) Second, the bonus provided in Schedule B was not "systematically deferred," under 29 C.F.R. § 2510.3-2(c). (*Id.* at 15–16.)

A plain reading of the regulatory language makes clear that Defendants' first argument is insufficient, standing alone, even if the plan is a bonus plan. The regulation provides that a plan is not an ERISA pension plan if it is a bonus for work performed, *unless* the payments are systematically deferred to the termination of covered employment or beyond *or* the payments are to provide retirement income to employees. *See* 29 C.F.R. § 2510.3-2(c). Therefore, Defendants' argument that Schedule B is not an ERISA-covered pension plan solely by virtue of the fact that it provides a bonus to employees by itself does not carry the day.

Additionally, Defendants' conclusory assertion that the bonus payments were not systematically deferred is incorrect. In support of this position, Defendants cite a string of cases that hold that the mere fact that payments might occur or continue after retirement does not mean they are systematically deferred, and argue that "federal courts have consistently . . . rejected the argument that the deferral of *some* (rather than substantially all) payments to the termination of employment establishes that the plan is an ERISA pension plan." (Reply Mem. of Law in

13

Further Supp. of Defs.' Mot. to Dismiss ("Defs.' Reply") 8 (Dkt. No. 33); *see also* Defs.' Mem.

15–16.) As Plaintiff rightly points out, these cases and this argument are not on point. The cited

cases hold that, as explained by Defendants, "[t]he mere fact that payments made pursuant to a

plan continue after retirement does not transform an otherwise excluded bonus plan into one

whose payments are 'systematically deferred' to the termination of employment . . . ." (Defs.'

Mem. 15 (citing *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 933 (8th Cir. 1999);

*Murphy*, 611 F.2d at 575; *Hahn*, 99 F. Supp. 2d at 279; *Albers*, 1999 WL 228367, at *4; *Kaelin*

*v. Tenneco, Inc.*, 28 F. Supp. 2d 478, 486–87 (N.D. Ill. 1998); *Int'l Paper Co.*, 978 F. Supp. at

511–12; *Goodrich v. CML Fiberoptics, Inc.*, 990 F. Supp. 48, 49–50 (D. Mass. 1988)).) Here,

though, it is not that bonus payments might *continue* or might possibly occur after retirement.

Rather, under Schedule B, no payments are to occur *until and unless* the recipient retires or dies.

In particular, Schedule B states, "Upon the Producer's retirement or death ("Termination Date"),

[Defendants] shall pay to Producer" the amount required under the Plan. (Schedule B.) Plaintiff

thus has a plausible claim that the Plan systematically defers payment until retirement or death.

*See Serio v. Wachovia Sec., LLC*, No. 06-CV-4681, 2007 WL 2462626, at *4 (D.N.J. Aug. 27,

2007) ("[C]ourts interpreting the [s]ection 1002(2)(A) definition of pension plan have

determined that the critical factor in determining whether a deferred compensation plan is an

ERISA pension plan is whether the plan allows payments to be made to employees during active

employment."); *see also Fenwick v. The Advest, Inc. Account Executive Nonqualified Defined*

*Benefit Plan*, No. 06-CV-880, 2009 WL 5184405, at *7 (D. Conn. Dec. 22, 2009) (holding that a

plan systematically deferred payments even though there was an "amendment to allow for

benefit payments to be made during a participant's employment," because "the benefits were

only payable upon meeting certain age restrictions and were calculated in terms of the 'normal

retirement age'"); *Kaufman v. S & A Rest. Corp.*, No. 06-CV-2192, 2008 WL 2242621, at *7 (N.D. Tex. May 30, 2008) ("Because the [p]lan only provides a chance to redeem 40% of vested points, and only once every 2 years, the court finds that the defendants' bonus plan systematically defers payment until the termination of employment."); *In re Silicon Graphics, Inc.*, 363 B.R. 690, 697 (Bankr. S.D.N.Y. 2007) (holding that a plan is an ERISA-covered plan in part because it "provides that . . . no distribution shall be made or commenced prior to the [p]articipant's termination of employment or death, or a [c]hange of [c]ontrol" even though there was an early withdrawal option (internal quotation marks omitted)); *In re Meinen*, 228 B.R. 368, 381 (Bankr. W.D. Pa. 1998) (holding that a plan is an employee pension benefit plan in part because it "expressly provid[ed] for a deferral of income until a participating employee's severance of employment by reason of, inter alia, retirement" (italics omitted)); *Spitz v. Berlin Indus., Inc.*, No. 93-CV-6355, 1994 WL 48593, at *4 (N.D. Ill. Feb. 16, 1994) (holding that a plan systematically deferred "a significant amount of the payments" and thus systematically deferred income when a participant could "not withdraw more than 50% of his account . . . during each redemption period until he [was] at least 58").[4]

In addition to considering the relevant statutory and regulatory provisions, when deciding whether a plan is a "pension plan" under ERISA, courts in this District have considered the following six factors:

> (1) [the plan's] express purpose, (2) whether the employer maintains discretion over awarding benefits, (3) whether the payments are given on the basis of work

---

[4] Schedule B's stated intent that the Plan "comply with Section 409A of the Internal Revenue Code, the applicable Treasury Regulations promulgated thereunder[,] and Internal Revenue Service Notice 2005-1," which address taxation of deferred compensation, does not materially affect this determination. (Schedule B.)  *See Weekley v. Thales Fund Mgmt., LLC*, No. 12-CV-2499, 2012 WL 6808523, at *4 (S.D.N.Y. Dec. 28, 2012) (holding that references in a plan to Section 409A of the Internal Revenue Code "show that the [p]lan allows post-termination deferrals, [but] they give no indication that such deferrals are systematic").

> performed, (4) whether the payments systematically are deferred until the end of
> employment, (5) the manner in which the company promoted the plan, and
> (6) whether penalties were imposed to deter redemption until an employee retired.

*Boudinot*, 2012 WL 489215, at \*5; *see also Hardy*, 957 F. Supp. 2d at 415 (considering the same

factors). The Court notes that these factors are repetitive with another multi-factor test,

discussed below, and that it is not entirely clear how helpful these factors are in this case. Here,

for example, Schedule B does not have an express purpose, there are no allegations regarding the

manner in which the company promoted the plan, and there could not have been penalties to

deter redemption until an employee retired because the employee had no choice but to wait until

retirement (or death) to redeem. Pointing to the existence of an ERISA pension plan, the

payments were systematically deferred until the end of employment, as discussed above.

Additionally, under the terms of Schedule B, the payments to the producer were not

discretionary, further suggesting a finding that there was an ERISA plan. *See Boudinot*, 2012

WL 489215, at \*6 (reasoning that the fact that the plan provided the board "with sole discretion

to decide when and to whom to grant stock options . . . suggests that the [plan] was not an

ERISA plan"); *see also Oatway v. Am. Int'l Grp., Inc.*, 325 F.3d 184, 189 (3d Cir. 2003) (holding

that a stock option plan was not an ERISA plan where the options "were discretionary, [and]

given in recognition of special service"); *Murphy*, 611 F.2d at 574 (holding the same, with

respect to a bonus plan); *Hardy*, 957 F. Supp. 2d at 417 (reasoning that the fact that the

defendant "had complete discretion whether to award the annuities in the first place, and, even

after [the] [p]laintiff was named the beneficiary, [the defendant] apparently retained discretion to

withdraw the benefit" counseled against a finding of an ERISA plan). Pointing in the other

direction, the payments under the Plan were to be given on the basis of work performed, as the

amount of the payment was tied to the gross commissions paid to Defendants with respect to the

producer's Book of Business in the year prior to retirement or death.  (Schedule B.)  On balance,

these factors, as well as the Court's analysis under the plain language of the statute and the

regulation indicate that Plaintiff has plausibly alleged that Schedule B qualifies as an ERISA

pension plan.

> b.  Determining Whether the Plan Requires an Ongoing Administrative
> Program

While Schedule B meets the statutory and regulatory definitions of an ERISA pension

plan, that alone is not sufficient to bring the plan under the purview of ERISA.  For Plaintiff to

plausibly state a cause of action under ERISA, Schedule B must also be an ERISA plan, fund, or

program.  As explained above,

> [a] plan, fund, or program under ERISA is established if from the surrounding
> circumstances a reasonable person can ascertain the intended benefits, a class of
> beneficiaries, the source of financing, and procedures for receiving the benefits.
> The touchstone for determining the existence of an ERISA plan is whether a
> particular agreement creates an ongoing administrative scheme.

*Hardy*, 957 F. Supp. 2d at 413 (citations, alterations, and internal quotation marks omitted); *see

also Tischmann*, 145 F.3d at 565 ("[B]oth the Supreme Court and this court have emphasized

that ERISA applies only where . . . an undertaking or obligation requires the creation of an

ongoing administrative program" and explaining the policy behind this requirement (internal

quotation marks omitted)).  Defendants contest only that the "touchstone" requirement of an

ongoing administrative scheme exists in this case.  (Defs.' Mem. 8–13.)  Plaintiff and Defendants

agree that, when deciding whether a particular benefit program requires the creation of an

ongoing administrative program, courts consider the factors set out in *Schonholz v. Long Is.

Jewish Med. Ctr.*, 87 F.3d 72 (2d Cir. 1996).  These non-exhaustive factors include "whether the

employer's undertaking or obligation requires managerial discretion in its administration;

whether a reasonable employee would perceive an ongoing commitment by the employer to

provide employee benefits; and whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria." *Id.* at 76 (citations and internal quotation marks omitted).[5]

Plaintiff argues that there is sufficient discretion required to satisfy the first *Schonholz* factor. (*See* Pl.'s Mem. 8–16.) First, the employer must determine whether an individual is eligible for the vested producer plan by determining whether he has reached the seventh anniversary of the "Employment Date," which is defined in Schedule B as either the date of the contract or the date of the Producer's first independent contractor agreement, "if Producer had been engaged previously on a continuous basis as an independent contractor prior to the date hereof." (Schedule B.)

Second, eligibility for the Plan is contingent on continued adherence to Sections 5 and 6 of the 2009 Producer Agreement. (*See id.* ("Any violation of Sections 5 or 6 of this Agreement by Producer will result in forfeiture of the bonus payable under the Vested Producer Plan and will require Producer to immediately return all payments already received.").) As noted above, Section 5 of the 2009 Producer Agreement limits disclosure of confidential information learned in the course of business, and Section 6 provides that during the course of the Agreement and for five years following the producer's termination with Defendants, the producer will not solicit or attempt to influence accounts handled by Defendants or solicit or attempt to persuade any other producer or salesman of Defendants to work for or represent another insurance company. (Producer Agreement ¶¶ 5–6.)

---

[5] Though *Schonholz* involved a severance plan, the analysis is equally applicable to determining whether a plan is an ERISA retirement plan. *See Hardy*, 957 F. Supp. 2d at 415 (applying the *Schonholz* factors to determine whether post-retirement payments constituted an ERISA plan); *Gabelman v. Sher*, No. 11-CV-2718, 2012 WL 1004872, at *3 (E.D.N.Y. Mar. 23, 2012) (same).

Third, Plaintiff argues that there is discretion in determining what constitutes the Producer's Book of Business.  Schedule B provides that "[Defendants] will maintain an ongoing and updated listing of Producer's accounts, which [Defendants] will provide to Producer for review on a periodic basis.  All such accounts coded to Producer (excluding any Life, Health or Employee Benefit policies) shall be referred to herein as Producer's Book of Business." (Schedule B.)  In that regard, Plaintiff argues that determining the bonus is not a simple computation, but rather requires analysis and discretion as to which accounts are included and the applicable commission rate for the policies on each account.  In particular, Plaintiff argues that "[d]iscovery will show that this is not a simple computation," as "analysis and discretion are required to determine which accounts are included in an employee's book of business, and to determine the applicable commission rate paid to [Defendants] for the policies sold on each account in the Book of Business."  (Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Mem.") 9–10 (Dkt. No. 38).)  Furthermore, Plaintiff asserts that "[d]iscovery will . . . show that there is some dispute concerning what is included in the 'Producer's Book of Business' and that the 'gross commissions paid to [Defendants] are not constant for all policies."  (*Id.* at 10.)[6]

Defendants counter that this level of discretion is insufficient, arguing that the benefits are predetermined and that administration of the bonus plan only requires a simple arithmetic calculation.  They argue that there is nothing discretionary about the timing, form, or amount of the payments.  With respect to determining whether an employee is eligible, Defendants argue that this too is a ministerial task.  Finally, they argue that the return of the bonus for violation of

---

[6] Plaintiff also argues that the mere fact that payments are to take place over a 60-month period is enough to require an ongoing administrative scheme.  (Pl.'s Mem. 10–13.)

Section 5 or Section 6 similarly is insufficient because there is no discretion required: if Sections 5 or 6 are violated, the money must be returned.  (Defs.' Mem. 9–13; Defs.' Reply 2–6.)

Defendants are correct that determining whether the Producer has reached seven years of employment is a ministerial task insufficient to require an ongoing administrative program.  *See Hardy*, 957 F. Supp. 2d at 416 (holding that "monitoring—for example, to determine whether the[] . . . beneficiary is still living—'[is a] routine ministerial determination[] of objective fact that [is] not subject to employer abuse and, therefore, neither implicate[s] employer discretion nor require[s] an administrative scheme'" (quoting *Gabelman*, 2012 WL 1004872, at *4)). Defendants are also correct that the mere fact that payments are to occur over 60 months is insufficient to require an ongoing administrative scheme.  *See Gabelman*, 2012 WL 1004872, at *4 ("Once the payments are triggered pursuant to the [a]greement's terms, they are doled out mechanically each month in an amount determined by simple arithmetical calculation, which is insufficient to show the presence of a discretionary administrative scheme.  Thus, the benefits provided for in the [a]greement required little more of [the defendant] than writing a check each month.  The mere repetition of this act over the course of an installment-payment period is not enough to show an ongoing administrative scheme." (citation and internal quotation marks omitted)).  Furthermore, Defendants are correct that if the only individualized analysis is a simple arithmetic calculation and there is nothing discretionary about the timing, form, or amount of payments, this is insufficient to establish the requirement of an ongoing administrative scheme.  *See James v. Fleet/Norstar Fin. Grp., Inc.*, 992 F.2d 463, 467 (2d Cir. 1993) (holding that a severance plan was not an ERISA plan, because the defendants "need to make . . . simple arithmetical calculations did not require the establishment of a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of

benefits, the protection of which is the purpose of ERISA preemption" (citation, alterations, and internal quotation marks omitted)); *Gabelman*, 2012 WL 1004872, at *4 ("Once the payments are triggered pursuant to the [a]greement's terms, they are doled out mechanically each month in an amount determined by simple arithmetical calculation, which is insufficient to show the presence of a discretionary administrative scheme." (internal quotation marks omitted)); *Nowak v. Int'l Fund Servs. (N.A.), L.L.C.*, No. 09-CV-5103, 2009 WL 2432715, at *2 (S.D.N.Y. Aug. 7, 2009) (holding that severance payments "did not require any ongoing administrative scheme," because "[a]lthough the amount of the severance for each of the two [p]laintiffs could differ based on a difference in their base salaries, [the defendant] did not have discretion in the amount of benefits, and only needed to perform simple arithmetic calculations to ascertain those amounts").

However, based only on the pleadings and the documents it can consider, the Court cannot make such a factual determination. For example, Defendants do need to determine ongoing compliance with Sections 5 and 6 of the Agreement, and, according to Plaintiff, they also need to conduct discretionary analysis about which accounts are included in the Book of Business. These are the types of issues that courts find to require discovery and fact dispute resolution. In *Okun v. Montefiore Medical Center*, 970 F. Supp. 2d 267 (S.D.N.Y. 2013), a court in this District considered whether a policy where the payment of severance benefits depended on whether or not an employee was terminated "for cause" would involve sufficient managerial discretion to classify that policy as an ERISA plan. *Id.* at 274–75. The court synthesized the precedent as follows: "[w]here an employer has specific written criteria for determining whether an employee is terminated for cause, the scope of discretion is not open-ended, but rather requires the employer to analyze only a fixed set of criteria," which is "not the type of

managerial discretion contemplated by ERISA," but where the policy "does not set forth criteria to determine whether an employee's termination should be considered for cause," administering such a policy "requires the exercise of significant managerial discretion." *Id.* (internal quotation marks omitted).  Here, the Court cannot say what factors will come into play in determining compliance with Sections 5 and 6, or what criteria will be used to include or exclude certain accounts.

The second consideration is whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits.  "In connection with this factor, courts consider: (1) whether the . . . policy is subject to termination or amendment by the employer; (2) the employer's ongoing responsibilities in administering the . . . policy; and (3) whether the terms of the . . . policy are clear and definite and have a definite termination date."  *Okun*, 970 F. Supp. 2d at 276 (citations and internal quotation marks omitted).  Turning to the first consideration, the fact that the Plan does not provide for the alteration or termination of Schedule B supports the view that there is an "ongoing commitment to provide employee benefits."  *Davis v. Commercial Bank of N.Y.*, 275 F. Supp. 2d 418, 424 (S.D.N.Y. 2003) (internal quotation marks and footnote omitted); *see also Schonholz*, 87 F.3d at 76–77 ("The . . . [p]lan's effective period was unlimited and would have reasonably been perceived by an employee as an ongoing commitment."); *cf. Tischmann*, 145 F.3d at 566 (finding a plan to be governed by ERISA despite the fact that a provision in the plan that stated that the plan is subject to termination or amendment by the employer weighs against a finding that a reasonable employee would perceive the plan as an ongoing commitment).[7]  Second, Defendants do have at

---

[7] In fact, that Defendants attempted to get Plaintiff to sign Schedule F, which would have removed Schedule B and allow Defendants to reinstate it at their discretion, suggests that Defendants did not think they had the discretion to terminate Schedule B on their own.

least some ongoing responsibilities in administering the policy, in addition to making periodic payments, as Schedule B requires Defendants to "maintain an ongoing and updated listing of Producer's accounts, which [Defendants] will provide to Producer for review on a periodic basis." (Schedule B.)  Similarly, the Producers have ongoing duties to the employer, as they are required to continue complying with Sections 5 and 6 of the 2009 Producer Agreement.  *Cf. Nowak*, 2009 WL 2432715, at *2 (noting, in finding no ERISA plan, that the employer "had no ongoing responsibilities under the agreements other than sending checks" and the employees "had no obligations to" the employer); *Sheer v. Isr. Disc. Bank of N.Y.*, No. 06-CV-4995, 2007 WL 700822, at *2 (S.D.N.Y. Mar. 7, 2007) (holding that a reasonable employee would not conclude that the employer was making an ongoing commitment to employees to provide benefits because "[t]here [were] no ongoing responsibilities on the part of the [employer] or the employees . . . once the employee receive[d] her severance pay and [left] the company," and comparing those facts with those in *Tischmann*, where the "benefits could be terminated if the employee violated one of the other enumerated provisions of the agreement"); *Hijeck v. United Techs. Corp.*, 24 F. Supp. 2d 243, 251 (D. Conn. 1998) (holding that a requirement for a terminated employee to release any potential legal claims related to the termination is "not analogous to a continuing duty not to disclose trade secrets, work for a competitor, or engage in any activity which is inimical to the best interests of the company, which the Second Circuit has found to be indicative of an ongoing commitment to provide benefits, i.e., so long as the severing employee's conduct is acceptable" (internal quotation marks omitted)).  Third, the policy does not have a fixed and definite end date, nor is it "limited either to a single payment or to a short span of time upon a plant or office closing." *Tischmann*, 145 F.3d at 566.  Rather, Schedule B provides for 60 monthly payments beginning at the point of retirement or death, whenever that

may be. *See Kosakow v. New Rochelle Radiology Assocs.*, *P.C.*, 274 F.3d 706, 737 (2d Cir. 2001) ("[S]everance pay in the present case is offered without any apparent date restriction, and thus could reasonably be seen by employees as an ongoing commitment by [the employer.]"); *Okun*, 970 F. Supp. 2d at 272 (noting the significance of a plan containing "no provision for its termination or amendment and that it was 'not limited either to a single payment or to a short span of time upon a plant or office closing'" (quoting *Schonholz*, 87 F.3d at 74–76)).

Also relevant to the question of whether an employee would perceive an ongoing commitment from the employer is whether the agreement was individualized or generalized, that is whether payment is contemplated only as a one-time occurrence. *See Davis*, 275 F. Supp. 2d at 424 ("The severance [p]lan was published exclusively in the [e]mployee [h]andbook, and is applicable in a wide array of circumstances that are likely to repeatedly recur.  In other words, the [p]lan does not contemplate severance only in the case of a one-time occurrence.").  Here, it is unclear to whom the Plan applies as it appears in a contract signed between Plaintiff and Defendants, rather than, for example, in a handbook given to all employees.  However, Schedule B does appear to be a form contract, so it may be that this contract was widely used among employees.

The third consideration is whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria.  A ministerial determination of whether an employee retired or died is insufficient to meet this requirement. *See Hardy*, 957 F. Supp. 2d at 416.  However, Defendants must analyze individual compliance with Sections 5 and 6 of the 2009 Producer Agreement, as noted above.

Based on the pleadings and other materials that are properly considered, the Court concludes that it remains an open factual question as to whether an ongoing administrative

24

scheme was necessary to carry out Schedule B. Discovery on this issue, particularly into the level of discretion involved in the calculation of payments, whether the amounts of the payments were determined by objective or subjective factors, how determinations as to compliance with Sections 5 and 6 were to be made, who participated in this Plan, and how the Plan was marketed, may establish whether the Plan is covered by ERISA.[8] While, as Defendants forcefully argue, the Court may determine the applicability of ERISA as a matter of law when the undisputed terms of the plan are in the record, the Court need not do so. Here, the issue is not whether the terms of the Plan fit under the statutory and regulatory language; the Court has determined that they do. Rather, the remaining issue is the fact-intensive question of whether administering the Plan requires an ongoing administrative scheme, such that it should be considered an ERISA plan. Because the Court has insufficient information to assess whether the Plan requires an ongoing administrative scheme, the Court declines at this point to determine that the Plan either is or is not an ERISA-covered plan.

### III.  Conclusion

For the above reasons, Defendants' Motion To Dismiss Plaintiff's First and Second Claims is denied. The Clerk of the Court is respectfully directed to terminate the pending Motion. (*See* Dkt. No. 27.)

SO ORDERED.

Dated: White Plains, New York
March **25** , 2015

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[8] Discovery regarding the existence of plan fiduciaries, procedures for submitting claims, and whether money is set aside or held in trust for payout under Schedule B may also give further insight into whether Schedule B should properly be considered a plan under ERISA. *See Okun*, 970 F. Supp. 2d at 277; *Gabelman*, 2012 WL 1004872, at *6.